Matthew D. Benedetto (SBN 252379)
matthew.benedetto@wilmerhale.com
Vivek A. Banerjee (SBN 340685)
vivek.banerjee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Defendant Bank of America, N.A.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO ROLDAN, III, an individual; KIENSANG HUYNH, an individual; ROGELIO RAMIREZ, an individual; MIKHAIL GERSHZON, an individual; VISHAL SHAH, an individual; and PATRICIA COBARRUVIAZ, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national association; and DOES 1 through 100,<br><br>Defendants. | Case No. 2:24-cv-00136-SPG-PD<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date:  March 13, 2024<br>Time:          1:30 PM<br>Judge:         Hon. Sherilyn Peace Garnett |

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.     The OBSA Clause Plaintiffs Challenge Applies Only to Use of the Zelle Service ................................................................................................ 2

    II.    The OBSA Is Not a Contract or Proposed Contract for the Sale or Lease of Goods or Services ............................................................... 4

    III.   The OBSA Does Not "Force[] California Customers to Waive their Right to Make a Statement Regarding the Bank and its Products and Services" ...................................................................................... 7

    IV.   Plaintiffs Have Not Alleged A Claim For Relief Under California's Unfair Competition Law ................................................ 11

    V.    Leave to Amend Would Be Futile ................................................................ 12

CONCLUSION ............................................................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................................ 14

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

Case 2:24-cv-00136-SPG-PD Document 19 Filed 02/28/24 Page 3 of 18 Page ID #:197

# TABLE OF AUTHORITIES

Page(s)

- ii -

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Federal Cases**

*United States v. Afshari*,
  426 F.3d 1150 (9th Cir. 2005) ............................................................................. 11

*In re Ameriquest Mortgage Co.*,
  2007 WL 1202544 (N.D. Ill. Apr. 23, 2007) .......................................................... 6

*Apple Inc. v. Allan & Assoc. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ..................................................................... 1

*EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co.*,
  2017 WL 3017596 (C.D. Cal. July 10, 2017) ........................................................ 4

*Gutierrez v. Wells Fargo & Co.*,
  622 F. Supp. 2d 946 (N.D. Cal. 2009) .................................................................... 7

*Hernandez v. Hilltop Financial Mortgage, Inc.*,
  622 F.Supp.2d 842 (N.D. Cal. October 22, 2007) ............................................ 5, 6

*Jefferson v. Chase Home Finance LLC*,
  2007 WL 1302984 (N.D. Cal. May 3, 2007) ......................................................... 6

*Knox v. Ameriquest Mortgage Co.*,
  2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) ...................................................... 6

*Quigley v. Yelp, Inc.*,
  2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ........................................................ 5

*Romero v. Countrywide Bank, N.A.*,
  740 F. Supp. 2d 1129 (N.D. Cal. 2010) ............................................................... 12

*Trustees of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*,
  519 F.3d 1045 (9th Cir. 2008) ............................................................................... 4

**State Cases**

*Berry v. Am. Express Publ'g, Inc.*,
  147 Cal. App. 4th 224 (2007) ............................................................................ 6, 7

*Fairbanks v. Superior Court*,
 46 Cal.4th 56 (2009) ..................................................................................................6

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 ......................................................................................................12

**State Statutes**

California Civil Code § 1670.8 .........................................................................*passim*

California's Unfair Competition Law ..........................................................1, 11, 12

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

# PRELIMINARY STATEMENT

Plaintiffs' entire case rests on a contorted reading of the Bank's Online Banking Service Agreement ("OBSA") that should not survive even the most relaxed pleading standard. First, Plaintiffs assert that a single contractual provision, which clearly addresses only the use of the "Zelle Network Service," in fact concerns *all* of the online and mobile banking services described in the OBSA. Second, they interpret a Zelle term-of-use provision which says *nothing* about statements a customer may or may not make about the Bank to be a broad, non-disparagement "waiver" in violation of California Civil Code § 1670.8. Plaintiffs also make a number of new allegations in their Opposition brief for the first time, which the Bank addresses below, but which this Court need not credit.[1] But even if those new allegations are credited, they cannot salvage Plaintiffs' core claims under Section 1670.8. As explained in the Bank's Motion to Dismiss ("Motion"), the OBSA is not a contract for the sale or lease of goods or services and contains no provision restricting consumer speech about the Bank. Plaintiffs therefore fail to state a claim for a violation of California Civil Code § 1670.8 or California's Unfair Competition Law ("UCL"). The Complaint should be dismissed with prejudice.

---

[1] Plaintiffs allege for the first time in their Opposition that OBSA § 4(B)'s provisions regarding use of the Zelle "memo field" and provisions regarding Zelle transfer recipients' consent to receive automated text messages and emails (§ 4(D)(iii)) restrict consumer speech. Opp. 7. It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))

- 1 -

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

# ARGUMENT

## I. THE OBSA CLAUSE PLAINTIFFS CHALLENGE APPLIES ONLY TO USE OF THE ZELLE SERVICE

As explained in the Bank's Motion (at 3-5; 8-9), Plaintiffs' Complaint challenges a single provision in the Bank's OBSA prohibiting certain uses of the Zelle Network Service for illegal or brand-damaging activities, including, for example, using the money-transfer platform to purchase firearms or pornography, to finance terrorism, or to facilitate fraud. Benedetto Decl., Ex. A § 4(B). First, Plaintiffs do not acknowledge in their Opposition that they quoted selectively and misleadingly from the OBSA in their Complaint, nor that they did not even attach the full contract to their Complaint as an exhibit. In view of the Bank's Motion and the full text of the OBSA, which makes clear the limited application of the language that Plaintiffs challenge, Plaintiffs make an enormous leap. They argue that this provision applies not only to the use of Zelle, but to *all* of the various online and mobile banking services described in the OBSA. *See* Opp. 6. They assert that the term "Service" is "only defined once in Agreement, and it is defined broadly to include 'any online or mobile banking services maintained by Bank of America and accessible through bankofamerica.com using a personal computer or a mobile device . . .'" Opp. 6.

These assertions are demonstrably incorrect. The clause at issue—Section 4(B)—is subsumed under the heading "Zelle Network Service (Email and Mobile Transfers)." Benedetto Decl., Ex. A § 4. The first subheading under this main heading is entitled "Description of the Service." *Id*. § 4(A). This section goes on to describe the Zelle Network Service. *Id*. Contrary to Plaintiffs' assertion in their Opposition, the term "Service" *is* defined more than once in the OBSA. Opp. 6. It is defined (and narrowed) in the description of the Zelle Service in Section 4(A). The following clause, Section 4(B)—the allegedly offending clause—explains that

- 2 -
**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

1  "[t]he Service allows you to send or receive money using your consumer or small
2  business deposit account." *Id*. § 4(B).  Users must agree, for example, not to use
3  the "Service" to make court-ordered payments, payments to loan sharks, to fulfill
4  gambling debts, or for other reasons that expose the Bank to "liability, reputational
5  harm or brand damage." *Id*.

6  It is simply not a plausible reading that the "Service" referred to in this section
7  includes *all* of the other services described in the OBSA—including, for example,
8  Bill Pay or remittance transfers.  If it did, the statement that "[t]he Service allows
9  you to send or receive money using your consumer or small business deposit
10 account" in the ways defined and delimited by Section 4 of the OBSA would make
11 no sense, since the various other services described in the OBSA have additional
12 restrictions and conditions that are not applicable to Zelle.  When a Bank customer
13 uses Bill Pay, for instance, money is going only in one direction, and such
14 payments can be scheduled from a linked money market savings account, unlike
15 Zelle.  *See* Benedetto Decl., Ex. A § 3(A).  Remittance transfers require the
16 recipient to be in a foreign country and require the Bank to send the customer a
17 number of disclosures, which are not required for Zelle transfers.  *Id*. § 6(F).

18 Limits on the number of Zelle transfers (and the amount of those transfers)
19 described in OBSA § 4(K) also demonstrate that the "Service" described in Section
20 4 cannot include all of the other services described in the OBSA, as entirely
21 different limits apply to Internal Transfers (§ 2(A)); ACH and Wire Transfers
22 (§6(B)); and RTP transfers (§ 5(F)).  Plaintiffs have therefore advanced a clearly
23 erroneous reading of the OBSA.  Because the contract is unambiguous and not
24 "reasonably susceptible" to Plaintiffs' interpretation, it is proper for the Court to
25 resolve this issue on a motion to dismiss.  *See EFG Bank AG, Cayman Branch v.*
26 *Transamerica Life Ins. Co.,* 2017 WL 3017596, at *5 (C.D. Cal. July 10, 2017).

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

Section 4(B), the clause at issue, describes permissible and impermissible *uses* of the Zelle Service. Fatal to the Plaintiffs' Complaint here is that none of the impermissible uses of the Zelle Service includes making disparaging statements about the Bank or its services. The Court should therefore not credit Plaintiffs' interpretation of the "Service" referenced in Section 4(B), which contradicts a plain reading of the contract. Courts must "interpret written terms in the context of the entire agreement's language, structure, and stated purpose," and Plaintiffs cannot "isolate terms… in order to create an ambiguity where none exists." *Trustees of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008). Once the Court declines to credit this interpretation, Plaintiffs' whole cause of action fails because, as explained below, the Zelle Service is free, and California Civil Code § 1670.8 applies *only* to contracts involving the sale or lease of goods or services.

## II. THE OBSA IS NOT A CONTRACT OR PROPOSED CONTRACT FOR THE SALE OR LEASE OF GOODS OR SERVICES

As explained in the Bank's Motion (at 5-8), Plaintiffs have failed to plausibly allege that the OBSA is a "contract or proposed contract for the sale or lease of consumer goods or services." Cal Civ. Code § 1670.8(a)(1). They do not identify what "goods or services" they have purchased or leased, what mobile-banking service they have used to purchase or lease said goods or services, or what prices they have paid. And as explained above and in the Bank's Motion, the clause Plaintiffs challenge under Section 1670.8 refers only to certain uses of the Zelle Service, which is *free to use*. Benedetto Decl., Ex. A § 4(I) ("There is no fee for sending or receiving a transfer under the Service"). Bank of America does not sell or lease the Zelle Service to its customers, and Bank of America customers do not buy or lease the Zelle Service from Bank of America.

- 4 -
**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

In their Opposition, Plaintiffs argue that "[e]ven if" the Bank demonstrates that OBSA § 4(B) "only applies to use of the Zelle service"—which it obviously does—the provision is still "contained in a contract or proposed contract covering "goods or services"" because other services described in the OBSA involve the sale or lease of goods and services. Opp. 12-13. Plaintiffs list a few services, for which they claim the Bank "charges (and thus 'sells' to) consumers." Opp. 13. These include, they assert, services providing "loans, cash advances, brokerage services, escrow services, etc."; services for which the Bank charges a fee, like certain wire transfers; and services that might accrue "normal account fees and service charges" and "[r]eturned item fees." Opp. 12-13.

Plaintiffs' arguments fail for several reasons. First, as discussed above, the "Service" at issue is free. California Civil Code § 1670.8(a)(1) does not apply to free-to-use online services. *See Quigley v. Yelp, Inc.*, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) (dismissing claim under section 1670.8 where service at issue was free).

Second, the mere inclusion in the OBSA of certain non-Zelle-related services for which the Bank may charge fees does not render the contract between the parties one for the sale or lease of goods or services. Plaintiffs raise *Hernandez v. Hilltop Financial Mortgage, Inc.*, 622 F.Supp.2d 842 (N.D. Cal. 2007) in support of their contentions. But *Hernandez* is inapposite. That case dealt with a contract in which plaintiffs "paid to defendant" various fees, including a "Loan Origination Fee," a "Processing Fee," and an "Admin Fee," for services associated with the mortgage loan contract at issue. *Hernandez*, 622 F. Supp.2d at 851. This made the *Hernandez* contract unique even among other similar financial contracts, which California courts generally do not find to be sales contracts. *Compare Hernandez*, 622 F. Supp.2d at 851 *with Fairbanks v. Superior Court*, 46 Cal.4th 56 (2009) (CLRA does not apply to insurance contracts) *and Berry v. Am. Express Publ'g,*

- 5 -
**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

*Inc.,* 147 Cal. App. 4th 224, 233 n. 3 (2007) (denying coverage to "credit transactions which occur separately from any specific purchase of goods or services.")

Here, as a threshold pleading issue, Plaintiffs have not alleged that they paid any fees to Bank of America, nor *have* they in fact paid to use Zelle. Moreover, in *Hernandez* and the similar cases Plaintiffs cite (*Jefferson v. Chase Home Finance LLC,* 2007 WL 1302984 (N.D.Cal. May 3, 2007) and *In re Ameriquest Mortgage Co.*, 2007 WL 1202544 (N.D.Ill. Apr. 23, 2007)), the "services" which plaintiffs claimed rendered the mortgage contracts subject to the CLRA's provisions were an essential part of the actual services plaintiffs used and litigated about in those cases.[2] In *Hernandez*, plaintiffs paid fees for the processing of mortgage loans, *Hernandez*, 622 F. Supp.2d at 851. In *In re Ameriquest*, plaintiffs alleged the "costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees, and penalties." *In re Ameriquest Mortg.*, 2007 WL 1202544, at *2. Here, the services for which Plaintiffs allege the Bank assesses fees ("loans, cash advances, brokerage services, escrow services, etc."; domestic and international wire transfer fees; and exchange rate fees), Opp. at 13-14, have nothing to do with the Zelle Service. Plaintiffs have not alleged that they used any of those other services, nor that they actually paid any fees associated with any of those services, and the allegedly offending clause in the OBSA does not apply to those services.

---

[2] *In re Ameriquest Mortgage Co.*, 2007 WL 1202544 (N.D.Ill. Apr. 23, 2007), from the Northern District of Illinois, is non-binding on this Court, but nonetheless supports the Bank. The last case Plaintiffs raise, *Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927 (N.D.Cal. Aug. 10, 2005), contains very little reasoning, but in any event, there the plaintiffs alleged that defendants "unlawfully induce[d] borrowers to enter into mortgages in which monthly payments exceed[ed] the monthly income or excessive or unfair fees [were] levied." 2005 WL 1910927, at *4. Plaintiffs make no allegation that the Bank levied fees for the Zelle Service, let alone that those fees were "unfair."

- 6 -

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

The Bank's OBSA is not a contract for the sale or lease of goods or services. Rather, it describes various banking tools made available to Bank of America customers that enable those customers to transfer money, to make payments to creditors, or to purchase goods or services of their choosing from other merchants. This Court should accordingly follow the line of cases raised in the Bank's Motion that recognize the distinction between contracts that provide the means of purchasing goods or services and contracts that govern the sale or lease of goods and services themselves. Mot. 7; *See e.g. Berry*, 147 Cal.App.4th at 232 ("the extension of credit" is a "separate activity from purchasing or leasing goods and services, rather than an example of it"); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009) (making money available to purchase or lease goods and services is not itself a transaction resulting in the sale or lease of goods or services). The OBSA describes various "means" available to Bank of America customers to make purchases of goods or services. The OBSA does not in fact sell those goods or services. For this reason alone, the Court should grant the Bank's Motion as to all claims.

### III.  THE OBSA DOES NOT "FORCE[] CALIFORNIA CUSTOMERS TO WAIVE THEIR RIGHT TO MAKE A STATEMENT REGARDING THE BANK AND ITS PRODUCTS AND SERVICES"

The Bank's Motion explained that Plaintiffs misleadingly quote and incorrectly construe the provision of the OBSA that they allege gives rise to a claim under California Civil Code Section 1670.8. Mot 8-12. The provision—Section 4(B) of the Bank's OBSA—says nothing about statements a customer may or may not make about the Bank in public forums. It instead sets the terms and conditions of using the Zelle Service to transfer money. It provides, in that context, that the Bank may "suspend or terminate" a customer's use of the Zelle Service if it believes a customer is using the Service "to request, send or receive money"

related to a list of "illegal or brand damaging activities," which include, *inter alia*, requesting and sending money for illegal activities, firearms, sexual activities, terrorist funding, fraud, and harassment. *See* Benedetto Decl., Ex. A § 4(B).

In their Opposition, Plaintiffs argue that the "[a]greement makes clear that Bank of America acknowledges consumer speech as a potential way to 'use the Service,' and that it fully intends to regulate that speech, even on the Zelle platform." Opp. 18. Plaintiffs' Opposition takes us far afield from any plausible application of California Civil Code Section 1670.8 to a valid sales contract. Their Opposition engages in speculation and hypothetical argument that is completely untethered from any allegations that Plaintiffs have actually made in the Complaint regarding their alleged use of the Bank's online and mobile banking services. They also raise for the first time in their Opposition Section 4(B)'s alleged prohibition on the "use of memo fields to communicate with another customer," Opp. 18, and Section 4(D)(iii)'s alleged "regulat[ion]" of messages sent through Zelle. Opp. 18. However, not a single Plaintiff has alleged that he or she used the Zelle memo field or sent messages through Zelle or that the Bank punished, or threatened to punish, any Plaintiff for using the Zelle memo field in any way.

Once again, Plaintiffs interpret these provisions to the point of absurdity. Section 4(B)'s prohibition on the use of Zelle memo fields has nothing to do with disparaging statements a customer may make about the Bank. In full, the clause reads: "Illegal or brand damaging activities include… [u]se of the Zelle Payments Service in a manner for which it was not intended, or in a way that another customer finds harassing or inappropriate (e.g., use of memo fields to communicate with another customer with no intention of processing a Payment.)"

- 8 -
**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

Benedetto Decl., Ex. A § 4(B).[3] All this clause says is that customers may not use Zelle—a money transfer service—to harass other Zelle users or to *merely* send messages using the memo field without an accompanying payment. Zelle transactions contain memo fields so that one may account for the purpose of a transaction, for example, "$1,500 for September Rent." This clause prohibits a customer from using Zelle to, for example, say to another "Pay me $1,500 Or I Will Hurt You", because that is not a manner for which Zelle was "intended." Benedetto Decl., Ex. A § 4(B).

That makes perfect sense, because Zelle is *not* a messaging service: it is a money-transfer service. To read this clause to suggest that the Bank is prohibiting customers from posting disparaging comments about the Bank on online forums like X, Facebook, or Yelp stretches this clause beyond recognition. Plaintiffs offer another hypothetical where a Bank customer "publiciz[es] his or her use of the Bank's online banking platform to finance a public protest or other cause" which the Bank then "[finds] to be objectionable or promotive of violence or hate" and assert that such "expressive activity is forbidden under the plain terms of the Agreement." Opp. 19 n. 1. Not only has no Plaintiff pled that he or she has done this, but the speculation is facially absurd. Such expressive activity is not "forbidden" under the terms of the Agreement; the Bank simply reserves its right to restrict the ***use of the Zelle platform*** to send money to promote intolerance or hate. And even that restriction has nothing to do with California Civ. Code § 1670.8, which only restricts companies from including in their sales contracts clauses that forbid customers to make disparaging statements ***about the company***.

---

[3] The full text of this clause also fatally undermines Plaintiffs' claim that the "Service" at issue involves all the services in the OBSA. This clause would make no sense if it were intended to also refer to, for example, fees assessed for currency transactions.

- 9 -
**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

As for Plaintiffs' interpretation of Section 4(D)(iii), Opp. 18, which allegedly means the Bank "purports to regulate" messages consumers send through Zelle, Plaintiffs have imagined something completely unsupportable by the contractual language. Section 4(D) concerns "Consent to Emails and Automated Text Messages," and subsection 4(D)(iii) states, in full, "[i]n the case of any messages that you may send through either us or *Zelle* or that we may send or *Zelle* may send on your behalf to an email address or mobile phone number, you represent that you have obtained the consent of the recipient of such emails or automated text messages to send such emails or text messages to the recipient. You understand and agree that any emails or text messages that we send or that *Zelle* sends on your behalf may include your name and the memo that you sent." Benedetto Decl., Ex. A § 4(D)(iii). It is clearly erroneous for the Plaintiffs to construe this provision, which only says that customers must represent that recipients of confirmatory text messages or emails regarding Zelle transactions consent to such messaging, as a regulation on public statements consumers may make about the Bank.

Plaintiffs further argue in their Opposition that the Bank's regulation of the uses of Zelle for monetary transactions related to sexual materials or materials that "promote intolerance, violence or hate" would not make sense unless the Bank also intended to restrict customers from "publishing some statement." Opp. 18. This argument fails for several reasons. First, *even if* Section 4(B) had anything to do with statements a consumer may "publish," Section 1670.8 prohibits companies from including in their sales contracts only provisions "waiving the consumer's right to make any statement ***regarding the seller or lessor or its employees or agents, or concerning the goods or services***." Section 1670.8 does not prohibit companies from restricting statements customers may make about topics that do not have to do with the company itself. As the Bank has demonstrated, Section 4(B) of the OBSA *does not* restrict consumer speech, but even assuming that

- 10 -

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

Plaintiffs are right with regard to the above generic examples, regulating customer "expression" regarding the purchase of "sexual materials" or "promotion of intolerance, violence, or hate" would not be a prohibited restriction under California Civil Code § 1670.8. Second, it is certainly plausible that the Bank could restrict uses of the Zelle Service to obtain sexual materials or materials that "promote intolerance, violence or hate" without restricting consumer statements. The plausible reading of the OBSA is that it may be "brand damaging" to the Bank—and perhaps illegal—to use Zelle to *purchase* sexual materials, or to *send money* to, say, a hate group or terrorist organization. As explained in the Bank's Motion (at 10-11), this alone is not a restriction on consumer speech. *See e.g., United States v. Afshari,* 426 F.3d 1150, 1160 (9th Cir. 2005) (restrictions on donations to foreign terrorist organization permissible because "[t]he fact that the support takes the form of money does not make the support the equivalent of speech.").[4] In any event, such restrictions are not a "waiver" of any customer's right to publish a statement that is negative about the Bank or its services, which is all that California Civil Code § 1670.8 reaches.

### IV. PLAINTIFFS HAVE NOT ALLEGED A CLAIM FOR RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

Finally, for the reasons set forth in the Bank's Motion, Plaintiffs have failed to state a claim for violation of California's Unfair Competition Law. Mot. 12-14. Plaintiffs argue in their Opposition that they have validly alleged a violation of California Civil Code § 1670.8 and therefore have a valid, derivative UCL claim. But because Plaintiffs have not alleged a violation of California Civil Code § 1670.8, their derivative UCL claim should also be dismissed.

---

[4] Plaintiffs have provided no response to the case law raised in the Bank's Motion (at 10-11) recognizing that a restriction on the mere transfer of money does not constitute a restriction on protected speech.

Plaintiffs also have no retort to the Bank's argument that they have failed to plead facts entitling them to restitutionary disgorgement because they have suffered no loss of property or money. They conclusorily allege that they "[paid monies] to Defendants, including without limitation through the mobile and online banking transactions," Compl. ¶ 59, but nowhere explain what monies were paid, in what amount, for what purpose, or at what time. Plaintiffs do not allege that they exchanged any money as a condition of agreement to the OBSA, let alone that they have lost money which they are now properly owed. Plaintiffs do not (and cannot) allege that they lost any money (Zelle is free), nor that there is *any* "money or property in which [they] [had] a vested interest," which they lost as a result of actions taken by the Bank. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149. They are not entitled to any relief under the UCL.

### V.   LEAVE TO AMEND WOULD BE FUTILE

Finally, the Court should dismiss Plaintiffs' Complaint with prejudice because amendment would be futile. *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1135 (N.D. Cal. 2010) ("When amendment would be futile [] dismissal may be ordered with prejudice.") Plaintiffs have no claim given the plain and unambiguous language of the OBSA. No possible amendment to the Complaint can transform the OBSA into a sales contract, nor change what the OBSA actually says to bring it within the purview of California Civil Code § 1670.8. For that reason, dismissal should be granted with prejudice.

//
//
//
//

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

Dated: February 28, 2024

/s/ Matthew D. Benedetto
Matthew D. Benedetto (SBN 252379)
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
matthew.benedetto@wilmerhale.com

*Attorney for Defendant*
*Bank of America, N.A.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Bank of America, N.A. certifies that this brief contains 3,880 words, which complies with the word limit of L.R. 11-6.1

Dated: February 28, 2024                    Respectfully submitted,

                                            */s/ Matthew D. Benedetto*

                                            Matthew D. Benedetto (SBN 252379)
                                            matthew.benedetto@wilmerhale.com
                                            WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                            350 South Grand Ave., Suite 2400
                                            Los Angeles, CA 90071
                                            Telephone: (213) 443-5300
                                            Facsimile: (213) 443-5400

- 14 -

**DEFENDANT'S REPLY ISO MOTION TO DISMISS**