JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FRANCISCO ROLDAN, III, an individual; KIENSANG HUYNH, an individual; ROGELIO RAMIREZ, an individual; MIKHAIL GERSHZON, an individual; VISHAL SHAH, an individual; and PATRICIA COBARRUVIAZ, an individual, on behalf of themselves and all others similarly situated,

　　　　　　Plaintiffs,

　　v.

BANK OF AMERICA, N.A., a national association; and DOES 1 through 100,

　　　　　　Defendant.

Case No. 2:24-cv-00136-SPG-PD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [ECF NO. 24]**

　　　　Before the Court is Defendant Bank of America's ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint.  (ECF No. 24 ("Mot.")).  Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds that the matter is suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L. R. 7.15.  For the reasons stated below, the Court **GRANTS** Defendant's Motion to Dismiss.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On November 21, 2023, Plaintiffs filed their complaint in Los Angeles County Superior Court.  (ECF No. 1-1).  On January 5, 2024, Defendant Bank of America, N.A. removed the action to this Court.  (ECF No. 1).  On January 12, 2024, Defendant filed its Motion to Dismiss Plaintiffs' complaint.  (ECF No. 11).  Plaintiffs timely opposed.  (ECF No. 18).  On March 19, 2024, the Court granted Defendant's Motion to Dismiss Plaintiffs' complaint with leave to amend.  (ECF No. 21 ("Order")).  On April 4, 2024, Plaintiffs filed the operative first amended complaint.  (ECF No. 23 ("FAC.")).  On April 23, 2024, Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint.  ("Mot.").  Plaintiffs timely opposed on May 15, 2024.  (ECF No. 25 ("Opp.")).

Plaintiffs in this action are six Bank of America, N.A. ("Bank of America" or "Bank") customers who allege they have signed up for and used Bank of America's online and mobile-banking application services.  (FAC ¶ 1).  To use these services, Plaintiffs were required to agree to Bank of America's Online Banking Service Agreement ("OBSA").  (FAC ¶ 5).  Plaintiffs allege that the OBSA is in violation of California Civil Code § 1670.8 because the OBSA contains a non-disparagement clause restricting Plaintiffs' ability as customers of Bank of America to make damaging public statements about Bank of America.  (FAC ¶ 6).  According to Plaintiffs, "Pursuant to the [OBSA Agreement] that Defendants impose upon their customers for the privilege of accessing the goods and/or services offered, Defendants require users to agree that they shall not make any statements "that expose [Defendants] . . . to liability, reputational harm or brand damage" and further threaten to suspend or terminate a user's access to the Services if user does so."  (FAC ¶ 6).

Defendant's OBSA is an agreement between an owner of a Bank of America bank account (or their authorized representative) and the Bank.  (ECF No. 23-1 ("OBSA")).  The OBSA governs the use of Bank of America's online and mobile-banking services accessible through Bank of America's website on personal computers or through mobile devices.  (OBSA at 2) ("This Agreement governs your use of any online or mobile banking

services maintained by Bank of America and accessible through bankofamerica.com using a personal computer or mobile device[.]").  Plaintiffs allege that the OBSA "threatens to penalize users for making any statements that [the Bank] consider[s] to be 'reputationally harmful' or 'brand damaging.'"  (FAC ¶ 22).  In making this allegation, Plaintiffs rely on Section 4(B) of the OBSA.  In full, the relevant provision reads as follows:

> "**B. Eligibility and User Profile**
>
> When you enroll to use the Service you agree to the terms and conditions of this Agreement.  You represent that you have the authority to authorize debits and credits to the enrolled bank account.  You agree that you will not use the Service to send money to anyone to whom you are obligated for tax payments, payments made pursuant to court orders (including court-ordered amounts for alimony or child support), fines, payments to loan sharks, gambling debts or payments otherwise prohibited by law, and you agree that you will not use the Service to request money from anyone for any such payments.
>
> You agree that you will not authorize a third party to use the Service or share your credentials with a third party to use the Service on your behalf except in legally authorized situations such as legal guardianship or pursuant to a power of attorney.
>
> The Service allows you to send or receive money using your consumer or small business deposit account.  We reserve the right to suspend or terminate your use of the Service if we believe, in our sole discretion, that you are using the Service for other purposes, or if we believe you are using the Service in a manner that exposes Bank of America or *Zelle* to liability, reputational harm or brand damage, including but not limited to using the Service to request, send or receive money related to any of the following:

Illegal or brand damaging activities include, but are not limited to:

- Any activity that is illegal under federal or applicable state law (e.g., drugs, gambling, counterfeit goods);
- Firearms, ammunition and other weapons;
- Sexual activities or materials;
- Pornography;
- Materials that promote intolerance, violence or hate;
- Ponzi schemes;
- Traveler's checks, money orders, equities, annuities, or currencies;
- Digital currencies such as bitcoins;
- Terrorist funding;
- Fraud, for example:
  - Unauthorized Payments that occur in instances of account takeover, lost/stolen debit cards or account information, etc.;
  - Scams – Recipient convinces a Sender to send money with Zelle by (i). pretending to be or to represent another person or entity; or (ii). offering to provide a good, service, or additional funds while intending to provide nothing in return.
- Money laundering
- Use of the Zelle Payments Service in a manner for which it was not intended, or in a way that another customer finds harassing or inappropriate (e.g., use of memo fields to communicate with another customer with no intention of processing a Payment).

We may determine other eligibility criteria in our sole discretion." (ECF No. 11-3 at 8-9).

According to Plaintiffs, "Defendants seek to have users waive their right as consumers to make negative statements regarding Defendants or their goods or services, and further threaten to penalize consumers for making such statements." (FAC ¶ 8).

Plaintiffs also bring a derivative claim for violation of California Business and Professions Code §§ 17200 *et. seq.* for "unlawful" and "unfair" business practices, predicated on Bank of America's use of the OBSA. (FAC ¶¶ 57-60).

Plaintiffs bring these claims as a putative class action on behalf of "all persons residing in California" who applied for, enrolled in, activated, downloaded, or used any of the Bank's mobile-banking services. (FAC ¶¶ 27-28). Plaintiffs seek damages, statutory penalties, and injunctive relief.

## II.  LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint [or claim] either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the claimant pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In analyzing the sufficiency of the claims, a court must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf. Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

## III.  DISCUSSION

Defendant argues that Plaintiffs fail to state a claim for violation of Cal. Civ Code § 1670.8 because (1) the OBSA is not a "contract" for the "sale or lease of goods or services" and (2) the OBSA does not prohibit Bank of America Customers from making negative statements about Bank of America. Defendant then argues Plaintiffs fail to state a claim for violation of Cal. Bus. & Prof. Code §§ 1720 *et seq*. because the claim is wholly derivative of Plaintiffs' Cal. Civ. Code § 1670.8 claim.

### A.    Plaintiffs' Cal. Civ. Code § 1670.8 Claim

Under California law, a "contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." Cal. Civ. Code § 1670.8(a)(1). Plaintiffs allege that to access "the goods and/or services offered, Defendants require users to agree that they shall not make any statements 'that expose [Defendants]… to liability, reputational harm or brand damage' and further threaten to suspend or terminate a user's access to Services if user does so." (FAC ¶ 50).

Defendant challenges Plaintiff's allegations on two grounds. First, it argues that the OBSA is not a "contract" for the "sale or lease of goods or services" and thus Section 1670.8 is inapplicable to the OBSA. Second, Defendant argues Plaintiffs' have a mistaken reading of the OBSA. When understood correctly, Defendant contends, the OBSA does not prohibit Bank of America customers from making negative statements about Bank of America. The Court addresses each argument in turn.

As the text of the code makes clear, Section 1670.8 applies only to contracts for the sale or lease of goods or services. To allege a contract for sale, a plaintiff must allege that the plaintiff purchased a good or service. As several District Courts in the Ninth Circuit have observed, under Section 1670.8, a plaintiff must allege that they actually purchased a good or service from the defendant. *See Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *2-3 (N.D. Cal. Jan. 22, 2018) (finding that the plaintiff failed to state a claim under 1670.8 because the only services the plaintiff allegedly received from Yelp, Media Matters, and Facebook were free); *see also In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716-17 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (finding that the plaintiff failed to state a claim because the plaintiff did not allege any payment to the defendant for its services under Consumers Legal Remedies Act, which requires that someone bringing a claim must be "an individual who purchases or leases any goods or services").

Plaintiffs continue to allege that "Plaintiffs and Class members accessed, and/or used, and/or purchased goods or services from Defendants via the Services." (FAC ¶ 49). As held in this Court's prior Order, this conclusory allegation is not sufficient to overcome Defendant's motion to dismiss. (Order at 6). In particular, Defendant notes that Plaintiffs do not allege what "goods or services" were purchased such that the OBSA covers those purchased "goods or services." Plaintiffs' additions do not cure this deficiency. Nowhere in the FAC do Plaintiffs specifically allege that they purchased goods or services from the Defendants. Plaintiffs insert allegations that the "financial products that Plaintiffs accessed, used and/or purchased via their Bank mobile apps and through the Bank Websites include all those financial products identified and incorporated through Paragraph 1 of Plaintiffs' Complaint . . . ." (FAC. ¶ 50). Although it is true that Plaintiffs have alleged generally that Defendant's services or goods were "accessed, used and/or purchased," this addition does not adequately allege which services or goods were *purchased*, if any. Similarly, the FAC asserts that Defendants "collect fees that are additional to other banking fees" and that "Defendants regularly charge fees to consumers of their Services for the access to and use of those Services." (FAC ¶¶ 23, 51). Again, these statements do not allege that Defendants ever charged Plaintiffs with a fee for any good or service, which is fatal to a claim under 1670.8. *See Quigley*, 2018 WL 7204066 at *2-3.

Additionally, the Order stated that Plaintiffs' original complaint was ambiguous based on two possibilities—namely: (1) Plaintiffs contracted with Defendant Bank to purchase goods or services and the OBSA is the relevant contract for purchase or (2) Plaintiffs used the Bank's mobile-banking service, whose use would be governed by the OBSA, to purchase goods or services governed by separate sales contracts. (Order at 6-7). This ambiguity was fatal because Plaintiffs' claim left open the possibility that the OBSA, which contained the non-disparagement provision, did not cover the alleged purchase(s). Though Plaintiffs seek to resolve the ambiguity, they do so in a conclusory and insufficient manner. In the FAC, Plaintiffs claim that they "do not allege that they used the Bank's mobile-banking services to purchase other 'goods or services' outside of the agreement.

Instead, Plaintiffs entered into a contract and/or were presented with a proposed contract that governs the purchase and/or use of the Bank's goods or services identified in the Agreement." (FAC ¶ 50). Here, this allegation is overly conclusory without accompanying factual allegations demonstrating how the OBSA covered specific purchases between Plaintiffs and Defendant.

Because Plaintiffs have failed to adequately allege that Section 1670.8 applies to this action, the Court does not reach Defendant's argument that Plaintiffs have a mistaken reading of the OBSA. The Court therefore GRANTS Defendant's Motion to Dismiss as to this claim.

### B.    Plaintiffs' Cal. Bus. & Prof. Code §§ 1720 *et seq*. Claim

The second cause of action in Plaintiff's Complaint alleges violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq*. This statute prohibits "any unlawful, unfair . . . or fraudulent business act or practice."

Because Plaintiffs' Unfair Competition Law claim is wholly derivative of their Section 1670.8 claim, Defendant's Motion to Dismiss is hereby GRANTED as to this claim. *See* (FAC ¶ 58) ("By engaging in the above-described conduct, Defendants, and each of them, acted in a manner that is unlawful and unfair—including by virtue of the fact that their conduct violates California Civil Code section 1670.8—and have thus engaged in unfair business practices to the extreme detriment of Plaintiffs, which conduct is prohibited under California Business & Professions Code sections 17200, et seq.").

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss in full. Because Plaintiffs were unable to remedy their allegations in accordance with this Court's previous Order, and the Court believes further amendment would be futile, the

//

//

//

Court does not grant leave to amend.  *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131
(9th Cir. 2020).

**IT IS SO ORDERED**

DATED:  July 23, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE